IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

| | |
|---|---|
| IN RE:<br><br>NORMAN HUGH SMITH<br><br>        Debtor. | Case No. 10-81240 |
| NORMAN HUGH SMITH<br><br>        Plaintiff,<br><br>v.<br><br>CITIMORTGAGE, INC.<br><br>        Defendant. | Adv. No. 10-9104 |

**BRIEF OF DEFENDANT CITIMORTGAGE, INC.
IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

NOW COMES Defendant CitiMortgage, Inc. ("CitiMortgage") pursuant to the Court's Scheduling Order signed on January 28, 2011 and entered on January 31, 2011 and provides the following in support of its Motion to Dismiss pursuant to Rules 12(b)(6) and (7) of the Federal Rules of Civil Procedure and Rule 7012 of the Federal Rules of Bankruptcy Procedure:

**FACTUAL BACKGROUND**

The Debtor and his deceased wife acquired a parcel of real property located in Durham County having a street address of 1203 Park Avenue, Durham, NC 27701 by means of a General Warranty Deed from Ira Kirk Bradsher and Maggie T. Bradsher, which deed was recorded on October 1, 1998 in Book 2535 at Page 521 of the Durham County Registry (the "Property"). At the time the Debtor and his deceased wife acquired the Property, the Debtor

borrowed the sum of $52,000 by means of a Note originally payable to The Money Centre, Inc. dated September 22, 1998. A true and accurate copy of the Note is attached as Exhibit A hereto and incorporated herein.[1] The Note was executed by the Debtor's now deceased wife, Sheryl Smith in the Debtor's name under a Limited Power of Attorney, which was also recorded on October 1, 1998 in Book 2535 at Page 520 of the Durham County Registry – the page of the Durham County land records immediately preceding the aforementioned General Warranty Deed. A true and accurate copy of the Limited Power of Attorney is attached hereto as Exhibit B and incorporated herein. As security for the repayment of the Note, the Debtor, through his wife acting as his attorney-in-fact, executed a Deed of Trust that named The Money Centre, Inc. as beneficiary and which was also recorded on October 1, 1998 in Book 2535 at Page 523 of the Durham County Registry – immediately following the General Warranty Deed. A true and accurate copy of the Deed of Trust is attached hereto as Exhibit C and incorporated herein (the "Deed of Trust").

On October 20, 1998, the Debtor and his deceased wife both executed a second Deed of Trust purporting to secure repayment of a debt in the amount of $14,954.00 payable to Ira Kirk Bradsher and Maggie T. Bradsher, the two individuals who conveyed the Property to the Smiths. A true and accurate copy of this second deed of trust is attached hereto as Exhibit D and incorporated herein (the "Bradsher Deed of Trust"). There is no indication in the records of Durham County that the Bradsher Deed of Trust has ever been paid or satisfied, thus it remains a lien on the Property.

---

[1] This court may consider the documents attached to this memorandum of law without converting the Rule 12(b)(6) and (7) motion into a motion for summary judgment. *Gladden v. Winston Salem State Univ.*, 495 F. Supp. 2d 517, 519 n.1 (M.D.N.C. 2007) (holding that upon a motion to dismiss, documents that are "integral to and explicitly relied on in the complaint" may be considered if the authenticity of such documents is not in question) (citing *Phillips v. LCI Intern., Inc.*, 190 F.3d 609, 618 (4th Cir.1999)).

On or about April 26, 2010, the Internal Revenue Service filed a notice of tax lien on the Property to secure payment of unpaid Federal Income Taxes. This tax debt is further identified on the Debtor's Voluntary Petition as unpaid, meaning the IRS lien remains a lien on the Property from the date it was filed.

As admitted in the Amended Verified Complaint filed in this Adversary Proceeding on October 28, 2010, the Debtor's wife, Sheryl Smith, died on June 10, 2010. The Debtor filed his Voluntary Petition pursuant to Chapter 13 of the Bankruptcy Code on July 15, 2010. This is not the first bankruptcy the Debtor has pursued or the first time CitiMortgage's debt has been the subject of a bankruptcy petition of this Debtor. In 2006, the Debtor and his now deceased wife filed an earlier Chapter 13 Bankruptcy in case number 06-81699 before Hon. Catharine R. Aron (the "First Bankruptcy"), which was dismissed on April 2, 2010 for failure to make plan payments. Within the First Bankruptcy, the Debtor and his deceased wife treated the claim of CitiMortgage as a secured claim, and in the Order Confirming Plan entered on April 19, 2007, this Court ordered CitiMortgage's claim to be paid as a secured claim by the Chapter 13 Trustee. A true and accurate copy of the Court's April 19, 2007 Order is attached hereto as Exhibit E and incorporated herein.

The Debtor commenced this action on October 25, 2010 seeking to declare CitiMortgage's lien as invalid and to have CitiMortgage treated as an unsecured creditor. In the alternative, Debtor alleges that CitiMortgage's Deed of Trust should be avoided as a preference. CitiMortgage appeared and answered the Debtor's Complaint on January 7, 2011 and has moved to dismiss this Adversary Proceeding for failure to state a claim.

# ARGUMENT

As a matter of law, the Debtor lacks standing to allege the claims contained in the Complaint. Even assuming the claims were valid and enforceable these claims could only be alleged by the Chapter 13 Trustee. At the Court's Scheduling Conference on January 27, 2011, the Court allowed the Debtor until February 15 to amend the Complaint or join additional parties such as the Trustee. No such amendment has occurred, and the Complaint should be dismissed.

Even assuming the Debtor could proceed to prosecute this action, the Debtor is precluded from asserting that CitiMortgage is an unsecured creditor, because the Order Confirming Plain entered in April 2007 established as *res judicata* that CitiMortgage is a secured creditor. Moreover, CitiMortgage is secured as a matter of state law. Even though the Deed of Trust was only executed by the Debtor and purported to secure property held as tenants by the entirety, upon the death of the Debtor's spouse, the tenancy by the entireties was destroyed as a matter of law, and the Deed of Trust attached to the Property.

## I.    Standard of review.

Plaintiff's complaint should be dismissed pursuant to Rule 12(b)(6) for failure to state a claim. *See Bell Atlantic Corp. v. Twombly*, 500 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007); *Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868, 884 (2009). The longstanding rule regarding a motion to dismiss for failure to state a claim has been that a Rule 12(b)(6) motion "should not be granted unless the plaintiff can prove no set of facts to support the claim and entitle the plaintiff to relief." *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994). In *Twombly*, the United States Supreme Court reiterated that the

4

"no set of facts" standard was not to be applied rigidly without some showing that the Plaintiff alleges some plausible basis for seeking relief. As the Court held,

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

*Twombly,* 500 U.S. at ___, 127, S. Ct. at 1964-1965 (citations omitted).

*Twombly* was not a departure from past practice, but a reiteration of the importance of the trial court's role in protecting defendant parties from meritless litigation and the high costs associated with conducting discovery on otherwise baseless claims. As the Court wrote,

> We alluded to the practical significance of the Rule 8 entitlement requirement in *Dura Pharms., Inc. v. Broudo,* 544 U.S. 336, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005), when we explained that something beyond the mere possibility of loss causation must be alleged, lest a plaintiff with 'a largely groundless claim' be allowed to 'take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value.' So, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should...be exposed at the point of minimum expenditure of time and money by the parties and the court.'

*Id.* at ___, 127 S. Ct. at 1966. Accordingly, the court is not bound by a plaintiff's unsupported legal conclusions, because "the purpose of Rule 12(b)(6) is to test the legal sufficiency of the complaint." *Randall*, 30 F.3d at 522. S*ee also Faulkner Advertising Assocs., Inc. v. Nissan Motor Corp.*, 945 F.2d 694, 695 (4th Cir. 1991); *Thomas v. Northern Telecom, Inc.*, 157 F. Supp. 2d 627, 632 (M.D.N.C. 2000). "The presence...of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support the legal conclusion...Conclusory allegations

in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a fishing expedition." *Migdal v. Rowe Price-Fleming International, Inc.*, 248 F.3d 321, 326 (4th Cir. 2001) (citation omitted). "Self-serving, inaccurate legal conclusions cannot rescue a factually deficient complaint." *Faulkner*, 945 F.2d at 695. "[T]he Court need not accept as true the legal conclusions drawn from the facts...[or] unwarranted inferences, unreasonable conclusions, or arguments." *Buerer v. United States*, 141 F. Supp. 2d 611, 612 (W.D.N.C. 2001) (citation omitted; court's alterations). "[T]he discovery process is not available where, at the complaint stage, a plaintiff has nothing more than unlikely speculations." *DM Research, Inc. v. College of American Pathologists*, 170 F.3d 53, 56 (1st Cir. 1999). "The heavy costs of modern federal litigation...counsel against launching the parties into pretrial discovery if there is no reasonable prospect that the plaintiff can make out a cause of action from the events narrated in the complaint." *Nixon v. Individual Head of the St. Joseph's Mortgage Co.*, 615 F. Supp. 898, 899 (N.D. Ind. 1985).

## II.     The Debtor cannot collaterally attack the Court's Order Confirming Plan.

This Court has held that a Chapter 13 plan that is proposed by a debtor and then confirmed by the Court must be given *res judicata* effect with regard to the status of any creditors treated under the plan. *Phillips v. American General Finance, Inc.*, No. B-9950198-C7, 00-6019, 2001 WL 1699680 (Bankr. M.D.N.C. February 12, 2001). *Phillips* involved a Chapter 13 case that was later converted to a Chapter 7. The Chapter 7 Trustee sought to obtain a return of a vehicle that had been released by the debtors under their Chapter 13 plan prior to conversion of the case on the grounds that the repossession constituted a preference. This Court denied the Chapter 7 Trustee's motion for summary judgment holding that under § 1327(a) of the Bankruptcy Code "provisions of a confirmed [chapter 13] plan bind the debtor

and each creditor whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor had objected to, has accepted, or has rejected the plan...This provision requires that the order confirming the plan be given res judicata effect as to those issues which were or could have been decided at the time of confirmation." *Phillips*, 2001 WL 1699680 at *2 (citing 11 U.S.C. § 1327; *In re Woods* 130 B.R. 204 (W.D. Va. 1990)).

In the absence of any appeal of the confirmation order "the confirmed plan is res judicata and its terms are not subject to collateral attack." *Id.* (citing *In re Talbot*, 124 F.3d 1201, 1209 (10th Cir. 1997)). The only time a confirmation plan is not given *res judicata* effect is if a creditor's due process rights are violated by a lack of adequate notice. *Id.* at *3 (citing *In re Deutchman*, 192 F.3d 457 (4th Cir 1999); *In re Linkous*, 990 F.2d 160 (4th Cir. 1993)). *See also In re Castevens*, No. 99-51008C-13, Order of William L. Stocks (Bankr. M.D.N.C. May 1, 2000) ("a confirmation order in a Chapter 13 case which allows a claim bars relitigation of that claim.") Treatment of the claim does not change when a Chapter 13 case is converted to a Chapter 7. 11 U.S.C. § 348(f)(1)(B).

The doctrine of *res judicata* applies in subsequent actions, just as it would when a Chapter 13 case is converted to a Chapter 7. "[O]nce an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States*, 440 U.S. 147, 153 (1979). "Collateral estoppel, like the related doctrine of *res judicata*, has the dual purpose of protecting litigants from the burden of re-litigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co., Inc., v. Shore*, 439 U.S. 322, 326 (1979); *see also Eddy v. Waffle House, Inc.*, 482 F.3d 674, 679 (4th Cir. 2007). Given that it

7

was the Debtor and his now deceased wife, *themselves*, who originally proposed in their 2006 plan that CitiMortgage be treated as a secured creditor, and this Court accepted that proposal and reduced it to an order, the Debtor should be barred now by attempting to change the treatment of CitiMortgage's claim under the doctrine of *res judicata*.

### III. CitiMortgage's lien attached prior to the Petition Date.

The Property subject to CitiMortgage's Deed of Trust was obtained by the Debtor and his now deceased spouse while they were married. As such, the Property was held as tenants by the entireties, meaning that it could not be conveyed or encumbered by one spouse without the joinder of both. *Meachem v. Boyce*, 35 N.C. App. 506, 508, 241 S.E.2d 880, 882 (1978). It is on this basis that the Debtor alleges in this Adversary Proceeding that CitiMortgage's security interest is not a valid lien. *Am. Compl.* ¶ 13.

It has long been the law of the State of North Carolina that where one spouse conveys or encumbers property held by the entireties, but the tenancy by the entireties is later destroyed by divorce or death of one spouse, the conveyance or encumbrance attaches at the time the tenancy is destroyed. *Harrell v. Powell*, 251 N.C. 636, 112 S.E.2d 81 (1960); *Cruthis v. Steele*, 259 N.C. 701, 131 S.E.2d 344 (1963). In *Harrell*, the North Carolina Supreme Court held, "where a married woman conveys her real estate without the assent of her husband, if she survives her husband, she may not, after his death, recover the land or defeat the title of her grantee, or those in privity with him, on the ground that the deed was void for lack of assent of her husband at the time of execution." 251 N.C. 636, 639 (citing *Mills v. Tabor*, 182 N.C. 722, 109 S.E. 850 (1921); *Sills v. Bethea*, 178 N.C. 315, 100 S.E. 593 (1919)).

North Carolina courts enforce a conveyance by a married person of entireties property without the assent of their spouse as a contract even though the conveyance would not have been valid at the time it was made. As the Court of Appeals held in *Meachem*,

> "The purported deed is a contract to convey, and while the husband is alive the obligation of the contract can be enforced only by an action for damages the reason being that he court cannot require specific performance because it cannot compel the husband to give his written assent. After the death of the husband, the obstacle to specific performance is removed, and equity will declare the contract effective as a deed under the maxim 'equity regards as done that which ought to be done.'

35 N.C. App. at 510-11. Under this theory, the Court of Appeals held that a deed of trust and a subsequent deed to a third party made by one spouse without the other spouse's consent were held to be enforceable against one half interest of the property after the couple divorced, since upon divorce they immediately held title to the land as tenants in common, not by the entireties. *Id.* at 512.

A security interest granted by means of a deed of trust by a married person without joinder of their spouse attaches at the time the tenancy by the entireties is destroyed. *Branch Banking and Trust Co.*, 74 N.C. App. 550, 553, 328 S.E.2d 840, 842 (1985) (holding that a deed of trust on property held by the entireties attached to a one half interest of the property upon the divorce of the parties). The same holds true for a judgment lien against property of one married person – as soon as the tenancy by the entireties is destroyed, the lien attaches to the spouse's one half interest. *Union Grove Milling and Manufacturing Co. v. Faw*, 103 N.C. App. 166, 169, 404 s.E.2d 508, 510 (1991). *See also Martin v. Roberts*, 177 N.C. App. 415, 418, 628 S.E.2d 812, 815 (2006) ("Once the tenancy by the entirety has been dissolved, and the real property has been converted into another form of an estate, a creditor's judgment lien may attach to an individual spouse's interest in the new estate."). Tenancy by the entireties is

9

not just dissolved by means of divorce, it is also dissolved upon the death of one spouse. *Harrell*, 251 N.C. at 639, 112 S.E.2d at 84.

In this case, Mrs. Smith died on June 10, 2010. Immediately upon her death, the tenancy by the entireties was dissolved, and Mr. Smith took title to the Property by right of survivorship. Notwithstanding that the Deed of Trust was only signed by Mr. Smith, through his wife in her capacity as Mr. Smith's attorney-in-fact, without the actual signature of Mrs. Smith, at the time she died, Mr. Smith became the owner in fee simple of the Property, and the security interest granted by the Deed of Trust attached. Consequently, CitiMortgage was a secured creditor at the time this Petition was filed.

### IV. The Debtor lacks standing to challenge the alleged transfer as a preference.

Even if the Debtor was not precluded by *res judicata* to collaterally attack CitiMortgage's status as a secured creditor, the complaint fails to state a plausible claim for relief because as a matter of law, the Debtor does not have standing to sue under 11 U.S.C. § 547 to avoid CitiMortgage's lien.

#### A. The Debtor has no independent standing to assert the trustee's avoidance powers under 11 U.S.C. § 547.

In this district, a Chapter 13 debtor lacks independent standing to use the trustee's avoidance powers. *Hollar v. U.S*, 174 B.R. 198, 203 (M.D.N.C. 1994) (collecting cases). In *Hollar*, the debtors brought an adversary proceeding against the IRS seeking to set aside an IRS tax sale of certain real property as a fraudulent conveyance. Judge Stocks dismissed the section 548 action, seemingly because the IRS tax sale was not a transfer in property. On appeal, Judge Tilley held that "there is no statutory authority in Chapter 13 which grants a Chapter 13 debtor independent standing to sue under the trustee's section 548 avoidance

~#4811-9216-3080 v.2 ~

Case 10-09104    Doc 21    Filed 02/28/11    Page 10 of 15

powers." *Id.* The court based its holding on three grounds: (1) "section 548 expressly grants the avoidance power to the *trustee* without mention of the debtors;" (2) "Congress specifically enumerated those trustee powers which a Chapter 13 debtor may exercise exclusive of the trustee," and "[t]hat list of powers does not include the section 548 avoidance power;" and (3) Congress has provided, contrary to its statement in section 1303, that a Chapter 11 debtor in possession has all the rights and powers of a trustee." *Id.* (emphasis in original).

As with section 548, section 547 provides that only "the *trustee* may avoid any transfer of an interest of the debtor." 11 U.S.C. § 547(b) (emphasis added). Pursuant to section 1303, "the debtor shall have, exclusive of the trustee, the rights and powers of a trustee under sections 363(b), 363(d), 363(e), 363(f), and 363(l), of this title." 11 U.S.C. § 1303. Nowhere in section 1303 does it mention the avoidance powers of section 547. When compared to section 1107, which gives a Chapter 11 debtor in possession "all the rights . . . of a trustee serving in a case under this chapter," 11 U.S.C. § 1107, "[i]t is obvious that Congress could have given Chapter 13 debtors the same broad sweep of powers given in Chapter 11 but chose not to do so," *Hollar*, 174 B.R. at 203.

Other courts from within the Fourth Circuit and beyond have agreed with the reasoning in *Hollar*, holding that a Chapter 13 debtor has no independent standing to avoid a transfer as preferential. *See, e.g.*, *Matter of Hamilton*, 125 F.3d 292, 295-98 (5th Cir. 1997); *DeBarros v. Nat'l City Bank (In re DeBarros)*, 275 B.R. 251, 252 (Bankr. D. Md. 2002); *Miller v. Brotherhood Credit Union (In re Miller)*, 251 B.R. 770, 773 (Bankr. D. Mass. 2000); *Smoot v. Swann Hill Condominium Unit Owners Assoc. (In re Smoot)*, 237 B.R. 875, 880 (Bankr. D. Md. 1999). Likewise, a Chapter 7 debtor also has no independent standing under section 547. *See, e.g.*, *DeMarah v. U.S. (In re DeMarah)*, 62 F.3d 1248, 1250 (9th Cir. 1995); *Smith v.*

*Primus Auto. Fin.*, 382 B.R. 279, 282 (Bankr. D. Md. 2006); *In re Wilkinson*, 196 B.R. 311, 319 (Bankr. E.D. Va. 1996); *Carter v. Homesley (In re Strom)*, 46 B.R. 144, 148 (Bankr. E.D.N.C. 1985). Therefore, the Debtor, in the present action, has not stated a plausible claim for relief and his complaint should be dismissed with prejudice.

> **B. Debtor cannot avoid the alleged voluntary transfer to CitiMortgage under sections 522(g) and (h) of the Code.**

Even if the Debtor has sought to avoid the lien of CitiMortgage under sections 522(g) and (h), which he has not, such attempt, and any subsequent, further amendment to the Amended Verified Complaint would be futile because the alleged transfer to CitiMortgage was voluntary.

Although section 547 does not provide a Chapter 13 debtor with independent standing to sue, section 522 allows a debtor to use section 547 "to avoid involuntary transfers of exempt property under certain circumstances." *Hollar*, 174 B.R. at 203. In order to have standing to avoid a transfer, the debtor must establish the following five elements under section 522(h):

> (1) the transfer cannot have been a voluntary transfer of property by the debtor;
> (2) the debtor cannot have concealed the property;
> (3) the trustee cannot have attempted to avoid the transfer;
> (4) the transfer would have been avoidable by the trustee; and
> (5) the debtor could have exempted the property that is subject to the alleged preference.

11 U.S.C. § 522(g), (h); *see Hollar*, 174 B.R. at 204; *Smoot*, 237 B.R. at 880; *DeMarah*, 62 F.3d at 1250.

In this case, the Debtor is seeking to avoid a voluntary transfer: the lien he gave CitiMortgage. The Complaint states that CitiMortgage is the holder, servicer and/or agent for the holder of a first Deed of Trust on the real property and that "[s]aid Deed of Trust lists the Plaintiff as a grantor." *Am. Compl.* ¶¶ 8, 9. It is clear that a deed of trust is a voluntary

~#4811-9216-3080 v.2 ~

transfer given by the debtor, and the Complaint makes no assertions to the contrary. *See Strom*, 46 B.R. at 148 (finding a deed of trust to be a voluntary transfer). Accordingly, because the deed of trust was a voluntary transfer, the Debtor may not use section 522 to avoid the alleged preferential transfer.

**V.      This action should be dismissed for failure to join a necessary party.**

This Court should dismiss this action for failure to join a necessary party on the ground Brock & Scott PLLC, the Substitute Trustee of the Deed of Trust, recorded on October 10, 2006 in Book 5383 at Page 1 of the Durham County Registry, is a necessary party to this action under Rule 19 of the Federal Rules of Civil Procedure. A true and accurate copy of the Appointment of Substitute Trustee is attached hereto as Exhibit F and incorporated herein. As the subject matter of this action concerns status of real property of which Brock & Scott, PLLC has been appointed substitute trustee, it is a necessary party and must be joined to this action. Fed. R. Civ. P. 19. In its absence, this action should be dismissed pursuant to Rule 12(b)(7).

## CONCLUSION

For the reasons stated herein, the Debtor's Adversary Proceeding should be dismissed with prejudice.

This the 28th day of February, 2011

NELSON MULLINS RILEY & SCARBOROUGH, L.L.P.

By:  /s/ Donald R. Pocock
  Donald R. Pocock (N.C. Bar No. 29393)
  Email:  donald.pocock@nelsonmullins.com
  Brian R. Anderson (N.C. Bar No. 37989)
  Email:  brian.anderson@nelsonmullins.com
  380 Knollwood Street, Suite 530
  Winston-Salem, NC  27103

Phone:  336.774.3333
***Attorneys for Defendant CitiMortgage, Inc.***

~#4811-9216-3080 v.2 ~

# CERTIFICATE OF SERVICE

I hereby certify that on February 28, 2011 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send electronic notification of such to the following:

> Michael D. West
> bancm_ecf@ncmba.uscourts.gov

And I hereby certify that I have mailed the foregoing to the following non CM/ECF participants:

> Edward Charles Boltz
> The Law Offices of Orcutt, Bledsoe & Boltz
> 1738-D Hillandale Rd
> Durham, NC 27705
> *Attorney for Plaintiff Norman Smith*
>
> Richard M. Hutson, II
> P.O. Box 3613
> Durham, NC 27702
> *Chapter 13 Trustee*

NELSON MULLINS RILEY & SCARBOROUGH, L.L.P.

By:  /s/ Donald R. Pocock
      Donald R. Pocock (N.C. Bar No. 29393)
      Email:  donald.pocock@nelsonmullins.com
      Brian R. Anderson (N.C. Bar No. 37989)
      Email:  brian.anderson@nelsonmullins.com
      380 Knollwood Street, Suite 530
      Winston-Salem, NC  27103
      Phone:  336.774.3333
      Fax:  336.774.3299
      ***Attorneys for Defendant CitiMortgage, Inc.***